UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

GLENN ROLLEN, et al.,          )
                               )
    Plaintiff(s),              )
                               )
  vs.                          )     Case No. 2:08CV34 JCH
                               )
CITY OF BOWLING GREEN, et al., )
                               )
    Defendant(s).              )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants the City of Bowling Green, Missouri, Officer Kevin Coates and Officer Casey Hutsell's (collectively "Defendants") Motion for Summary Judgment, filed September 1, 2009. (Doc. No. 57). The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Glenn Rollen ("Plaintiff"), is an African-American adult male who, at all relevant times, resided in the City of Bowling Green, Missouri. (Amended Complaint for Violation of Civil Rights ("Complaint" or "Compl."), Doc. No. 26, ¶ 1). Defendants Kevin Coates ("Coates") and Casey Hutsell ("Hutsell") were, at all relevant times, uniformed police officers for Defendant the City of Bowling Green, Missouri. (Compl., ¶¶ 11-12). Officers Coates and Hutsell have been sued in both their individual and official capacities. (Id.).

---

[1] The Court's background section is taken primarily from Defendants' Statement of Uncontroverted Facts ("Defendants' Facts"), submitted with their motion. Defendants' Facts are supported by specific references to, among other things, Plaintiff's deposition and Defendants' affidavits. Because Plaintiff Glenn Rollen failed to submit a response to Defendants' Facts, they are deemed admitted for purposes of this summary judgment motion. See Local Rule 7-4.01(E) ("Every memorandum in opposition [to a motion for summary judgment] shall include a statement of material facts as to which the party contends a genuine issue exists....All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

The events giving rise to this litigation occurred on July 23, 2004. Officers Coates and Hutsell responded to a 911 call that had been placed to the Pike County, Missouri, Sheriff's office, reporting a disturbance at Plaintiff's residence. (Compl., ¶ 18; Defendants' Facts, ¶¶ 1, 2). Upon dispatch, Coates and Hutsell were informed that a domestic disturbance was in progress, and that a resident was threatening to harm himself and his mother. (Defendants' Facts, ¶ 3). Plaintiff's mother, Carolyn Rollen, answered the door when Coates and Hutsell arrived.[2] (Compl., ¶ 18; Defendants' Facts, ¶ 7). Plaintiff's and Defendants' descriptions of Coates and Hutsell's entry into Plaintiff's home differ. Plaintiff asserts that Coates and Hutsell falsely represented to Plaintiff's mother that they possessed a warrant allowing them to enter without her consent, but he admits he did not hear the conversation the officers had with the individual who answered the door, nor did he hear anything the officers said prior to their entry into the residence. (Compl., ¶ 20; Defendants' Facts, ¶ 24). Defendants maintain Carolyn Rollen consented to the officers' entry into the residence, and that she stepped out of the officers' way to allow them to enter. (Defendants' Facts, ¶¶ 9-10). Defendants further deny they represented to anyone at Plaintiff's residence that they had a warrant to enter the home. (Id., ¶ 18). Defendants characterize Carolyn Rollen appearance as "disheveled," and state she looked upset and afraid, and "was curled up in a defensive position." (Id., ¶ 11). Defendants further assert that, from the front door of the residence, Coates could hear "groaning and moaning" sounds coming from the back of the residence. (Id., ¶ 12). Neither party disputes that Plaintiff was not in the room when the officers entered the residence. (Compl., ¶ 21; Defendants' Facts, ¶¶ 13, 24).

Upon entering the residence, Defendants Coates and Hutsell encountered Plaintiff. (Compl., ¶ 21; Defendants' Facts, ¶ 13). Plaintiff had consumed at least eighteen beers prior to Defendants'

---

[2] Carolyn Rollen had been living at Plaintiff's residence for at least three months at the time of the incident. (Defendants' Facts, ¶¶ 5, 26).

arrival, and Defendants allegedly smelled alcohol on Plaintiff, noted that his speech was slurred, and observed a large butcher knife in his bedroom. (Defendants' Facts, ¶¶ 6, 13, 17). Defendants interviewed Plaintiff, who indicated that he intended to harm his mother or himself. (Id., ¶¶ 14-15). Defendants further allege Plaintiff stated he needed to be taken somewhere, so that he would not harm himself. (Id., ¶ 16). Plaintiff does not recall this conversation, or any statements Defendants made while they were in his home. (Id., ¶ 25).

Defendants removed Plaintiff from his residence, and transported him to the City of Louisiana, Missouri, jail for a 12-hour detoxification hold. (Compl., ¶¶ 23, 27; Defendants' Facts, ¶¶ 20, 21). Plaintiff maintains while he was in the custody of the City of Louisiana, he was subjected to unsanitary conditions, threats and intimidation, brutality, and unreasonable, excessive force. (Id., ¶ 38).

Plaintiff Rollen filed his Amended Complaint in this matter on April 14, 2009. (Compl., Doc. No. 26). In his Complaint, Plaintiff asserts the following causes of action against Defendants Coates, Hutsell, and the City of Bowling Green: Request for Declaratory Judgment (Count I)[3]; Deprivation of Civil Rights While Acting Under Color of Law – Unreasonable Search and Seizure (Count II)[4];

---

[3] In Count I, Plaintiff requests that the Court make the following declaration: that, in light of § 67.305 RSMo, § 67.315 did not authorize Coates and Hutsell to take Plaintiff into a twelve-hour detox hold; that Coates and Hutsell unlawfully searched and/or entered Plaintiff's residence on July 23, 2004; that the City of Bowling Green's policy and/or custom of arresting individuals believed to be intoxicated while in the privacy of their own homes are unlawful; and that the City of Bowling Green's policy and/or custom of "detoxification holds" are unlawful absent some allegation of intoxication in a public place and Order enjoining same. (Compl., P. 12).

[4] Count II alleges Coates and Hutsell's detention of Plaintiff pursuant to § 67.315 RSMo and Bowling Green police department policy and/or custom constituted an unreasonable search and seizure, in violation of the Fourth and Fourteenth Amendments. (Compl., ¶¶ 80-84).

and Deprivation of Civil Rights While Acting Under Color of Law – Unreasonable Detention and Excessive Force (Count III).[5]

As stated above, Defendants filed the instant Motion for Summary Judgment on September 1, 2009, alleging the City of Bowling Green is entitled to summary judgment on Counts I and II of Plaintiff's Complaint, because it is not subject to municipal liability for the alleged unlawful search and seizure. (Doc. No. 57, ¶ 6). Defendants further allege Officers Coates and Hutsell are entitled to summary judgment on Counts I and II of Plaintiff's Complaint, either on the basis of qualified immunity, or because Plaintiff fails to adduce evidence that they deprived him of a constitutionally protected right. (Id., ¶¶ 7-9).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

---

[5] In an Order entered August 3, 2009, this Court dismissed Count III of Plaintiff's Complaint with prejudice. (Doc. No. 54).

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Defendant The City Of Bowling Green – Municipal Liability

In their Motion for Summary Judgment, Defendants first assert that the City of Bowling Green is entitled to summary judgment because, "Plaintiff has failed to adduce[] facts that show a question of material fact as to whether the city had a policy or custom with respect to the alleged unlawful search and seizure." (Defendants' Motion for Summary Judgment, ¶ 6). A municipality "can not be held liable for an injury inflicted solely by its employees or agents on a theory of respondeat superior." Jackson v. East Prairie Police Dept., 2006 WL 156717 at *2 (E.D. Mo. Jan. 20, 2006) (internal quotations and citation omitted). "Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal policy or a widespread custom or practice that caused the plaintiff's injury." Id. (internal quotations and citation omitted). Such a municipal policy or custom must be shown to have been the, "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal quotations and citations omitted).

A "policy' is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler, 165 F.3d at 1204

(citations omitted). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Williams v. City of Beverly Hills, Mo., 2006 WL 897155 at *11 (E.D. Mo. Mar. 31, 2006) (internal quotations and citations omitted). To prove that a municipal custom exists, Plaintiff much show: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City of Bowling Green's employees; 2) that the City's policymaking officials were deliberately indifferent to or tacitly authorized such conduct after notice to the officials of the misconduct; and 3) that Plaintiff was injured by acts pursuant to the City's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation. Mettler, 165 F.3d at 1204.

In the instant case, Plaintiff offers no evidence of a City of Bowling Green policy that was deliberately indifferent to his constitutional rights, and that resulted in the injuries he alleges. Furthermore, Plaintiff offers no evidence of a widespread, persistent pattern of unlawful entries into individuals' residences, or of unconstitutional seizures of such individuals from their residences by City employees. This portion of Defendants' Motion for Summary Judgment must therefore be granted.[6]

## II.    **Defendants Kevin Coates and Casey Hutsell – Qualified Immunity**

---

[6] In his response to Defendants' Motion for Summary Judgment, Plaintiff concedes he has failed to demonstrate Defendants were motivated by a departmental policy or custom, but asserts such failure was due, "solely to Defendants' subversive discovery tactics." (Plaintiff's Reply to Defendants' Motion for Summary Judgment ("Plaintiff's Opp."), P. 5). Upon review of the record, however, the Court notes that although the discovery dispute between the parties was fully realized no later than July 27, 2009, Plaintiff never filed a motion to compel discovery, nor did he ever seek an extension of the August 13, 2009, discovery deadline in this matter. (See Defendants' Response to Plaintiff's Reply to their Motion for Summary Judgment, attached Exhs. 2-7). In light of these circumstances, the Court will not deny Defendants' Motion for Summary Judgment on the basis of any alleged outstanding discovery dispute.

In their Motion for Summary Judgment, Defendants next assert Coates and Hutsell are entitled to qualified immunity for their actions in entering Plaintiff's home, and removing him pursuant to RSMo § 67.315. (Memorandum in Support of Defendants' Motion for Summary Judgment, PP. 6-14). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (internal quotations and citation omitted). In analyzing Defendants' claim of qualified immunity, the Court must decide whether the facts Plaintiff has alleged or shown make out a violation of a constitutional right, and if so, whether the right at issue was "clearly established" at the time of Defendants' alleged misconduct.[7] Id. at 815-816. The sequence in which the Court considers the issues is not mandatory; rather, under recent Supreme Court law "judges....should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

### a. Unlawful Entry

Plaintiff alleges Coates and Hutsell unlawfully entered his residence without a warrant, in violation of his Fourth Amendment right to be free from unreasonable searches. (Compl., ¶ 20). "The Fourth Amendment (applicable to state actors by way of the Fourteenth Amendment) protects individuals from unreasonable searches of their homes." United States v. Lopez-Rodriguez, 396 F.3d 956, 958 (8th Cir. 2005). In the instant case, it is undisputed that Defendants did not possess a warrant to enter Plaintiff's residence. While a warrant supported by probable cause generally is required to search a private place, it is not necessary when an individual voluntarily consents to an

---

[7] In order to be clearly established, "a right's contours must be clear enough that a reasonable official would understand his or her conduct was unconstitutional." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002) (citation omitted).

officer's entry. United States v. Williams, 346 F.3d 796, 798 (8th Cir. 2003); Lopez-Rodriguez, 396 F.3d at 958-59. The issue before this Court, therefore, is whether such consent was given. This inquiry necessarily focuses on Carolyn Rollen's actions, because she was the individual who answered the door when Defendants arrived. (Compl., ¶ 18).

"[A] search is not unconstitutional as long as the officers reasonably believed that consent was voluntarily given. In other words, a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent." Lopez-Rodriguez, 396 F.3d at 959 (internal quotations and citations omitted). See also Williams, 346 F.3d at 799 (citations omitted) ("Further, consent reasonably implied from behavior suffices to trigger the exception.").

In the instant case, when Defendants arrived at Plaintiff's residence Carolyn Rollen, Plaintiff's mother, met them at the door. (Defendants' Facts, ¶ 7). Plaintiff was not present to witness Defendants' entry into the home. (Id., ¶ 24). When Defendants asked if Plaintiff was present, Carolyn Rollen "opened the door to the residence and stepped back and out of Officer Coates and Hutsell's way." (Id., ¶ 10). Only then did the officers enter the house. In light of these circumstances, the Court finds Carolyn Rollen behaved in a manner that would suggest to a reasonable person she was consenting to the officers' entry into the residence.[8]

Even assuming a reasonable person would not have construed Carolyn Rollen's actions as implying consent, "[a]n exception to the warrant requirement permits a law enforcement officer to enter and search a home if he acts with probable cause and exigent circumstances exist." Radloff v.

---

[8] As noted above, it is undisputed that Carolyn Rollen had been living at Plaintiff's residence for at least three months at the time of the incident, and thus had the ability to consent to the officers' entry. (Defendants' Facts, ¶ 26).

City of Oelwein, Iowa, 380 F.3d 344, 348 (8th Cir. 2004) (citation omitted), cert. denied, 543 U.S. 1090 (2005).

> Probable cause exists when it is reasonable to believe contraband or illegal activity will be found in a particular place. Exigent circumstances, although typically limited to situations where a life is threatened, a suspect's escape is imminent, or evidence is about to be destroyed, may also be found when there is a compelling need for official action and there is no time to secure a warrant.

Id. (citations omitted). As when evaluating the circumstances surrounding voluntary consent, an evaluation of probable cause and exigent circumstances "focuses on whether a law enforcement officer acted with a reasonable belief that probable cause and exigent circumstances existed, not on whether either actually existed." Id. (citation omitted).

Here, Defendants point to several specific and articulable facts which, when considered together, support this Court's finding that exigent circumstances and probable cause justified Defendants' entry into Plaintiff's residence. Defendants came to Plaintiff's residence in response to a 911 call regarding a domestic disturbance. (Defendants' Facts, ¶¶ 1-3). See United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir.) (noting the defendant acknowledged the police had a right to enter his apartment to investigate a 911 call), cert. denied, 523 U.S. 1131 (1998). Defendants had information that an individual at the residence was threatening to harm himself and his mother. (Defendants' Facts, ¶ 3). Upon their arrival at Plaintiff's residence, Defendants noted that Carolyn Rollen was "disheveled, upset, looked afraid, and was curled up in a defensive position." (Id., ¶ 11). Additionally, prior to entering the house Officer Coates heard, "groaning and moaning sounds coming from the back of the residence." (Id., ¶ 12). Based on these factual circumstances, that Defendants have alleged and Plaintiff has not challenged, the Court finds Defendants Coates and Hutsell acted

with a reasonable belief that probable cause and exigent circumstances existed, sufficient to authorize their entry into Plaintiff Rollen's residence without a warrant.[9]

### b. Unlawful Seizure

"To establish a violation of the Fourth Amendment in a section 1983 action, the plaintiff must demonstrate that a seizure occurred and that the seizure was unreasonable." Williams, 2006 WL 897155 at *7 (citation omitted). Because there is no dispute as to whether a seizure occurred, this Court's inquiry must focus on the reasonableness of the seizure.

Under Eighth Circuit law, "[i]n order to be entitled to qualified immunity, [Coates and Hutsell] must have acted in an objectively reasonable manner judged from the perspective of a reasonable officer on the scene possessing the same information." Louden v. City of Minneapolis, Minn., 233 F.3d 1109, 1110 (8th Cir. 2000) (citations omitted). Here, Defendants took Plaintiff into custody pursuant to Mo. Rev. Stat. § 67.315. Thus, the issue is whether a reasonable officer in Defendants' position would have believed that RSMo § 67.315 authorized the removal of an individual from his own residence because that person was intoxicated.

Section 67.315 provides in relevant part as follows:

1. A person who appears to be incapacitated or intoxicated may be taken by a peace officer to the person's residence, to any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve hours.

2. Any officer detaining such person shall be immune from prosecution for false arrest and shall not be responsible in damages for taking action pursuant to

---

[9] In his response to Defendants' Motion for Summary Judgment, Plaintiff asserts Defendants, "failed to produce the 911 caller or anyone else who might claim to have been a witness to any crime perpetrated by Plaintiff," and thus, "the innuendo of 'domestic disturbance' is without substantiation; and only serves as a weapon of mass distraction." (Plaintiff's Opp., P. 3). The Court finds such failure excusable, however, in light of Defendants' undisputed assertion that Plaintiff failed to produce his mother for deposition, and insisted he had no knowledge regarding her current residence, and no way of contacting her. (Defendants' Facts, ¶ 23).

> subsection 1 above if the officer has reasonable grounds to believe the person is incapacitated or intoxicated by alcohol and he does not use unreasonable excessive force to detain such person.

The statute thus clearly provides that in order to take a person into protective custody for up to twelve hours, an officer must have reasonable grounds to believe the person is intoxicated. State v. Friend, 711 S.W.2d 508, 511-512 (Mo. 1986). Further, the statute permits the officer to take the person to one of three places--his home, an available treatment center, or any other appropriate local facility, including a jail. Id. The statute offers no guidance as to locations *from* which a person may be removed, however. The Missouri Supreme Court explained the purpose of the statute as follows:

> Section 67.315 was enacted in order to protect the intoxicated individual and the public as part of the state's public safety provisions. The legislature has the power to provide some method of dealing with publicly intoxicated persons who may be a danger to themselves or others. The intent of the legislature was benevolent in seeking to protect society and individuals.

Id. at 512.

Upon consideration, the Court finds the following circumstances justified Officers Coates and Hutsell's reasonable belief in their authority to detain Plaintiff under Mo.Rev.Stat. § 67.315: First, they were in the process of responding to a 911 call reporting a domestic disturbance in progress, with a resident threatening to harm himself and his mother. (Compl., ¶ 18; Defendants' Facts, ¶¶ 1-3). Upon their arrival, the person answering the door appeared, in the officers' opinions, to be upset, concerned and afraid. (Defendants' Facts, ¶¶ 7, 11). Defendants then encountered Plaintiff, who admittedly had consumed at least eighteen beers prior to their arrival. (Compl., ¶ 21; Defendants' Facts, ¶ 6). After observing a large butcher knife in his bedroom, Defendants interviewed Plaintiff, who indicated that he intended to harm his mother or himself. (Defendants' Facts, ¶¶ 13-15). Under these circumstances, the Court finds Coates and Hutsell possessed arguable probable cause to detain

Plaintiff under Mo.Rev.Stat. § 67.315, in order to protect both Plaintiff and his mother.[10] <u>Lindstedt v. Jasper County, Mo.</u>, 205 F.3d 1346 (8th Cir. 2000). Defendants thus are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants the City of Bowling Green, Missouri, Officer Kevin Coates and Officer Casey Hutsell's Motion for Summary Judgment (Doc. No. 57) is **GRANTED**, and Plaintiff's claims against them are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this <u>15th</u> day of December, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[10] At minimum, the Court finds it was not clearly established that Defendants lacked the authority to remove Plaintiff pursuant to the statute.